**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 3-CR-17-006** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **VICTOR SANTIAGO-RIVERA,** | : | |
| **Defendant** | : | |

## MEMORANDUM

## I.    BACKGROUND

By way of relevant background, on January 17, 2017, defendant Victor Santiago-Rivera was indicted for attempting to commit a Hobbs Act Robbery, and for being a felon in possession of a firearm. Specifically, he is charged in a two count Indictment with Interference with Commerce by Robbery of a jewelry store in Kingston, Pennsylvania, in violation of 18 U.S.C. §1951, and Felon in Possession of a Firearm, in violation of 18 U.S.C. §922(g)(1). (Doc. 11).

On February 7, 2017, defendant was arraigned and pled not guilty to both counts against him in the Indictment. (Doc. 16). Defendant's detention from January 11, 2017 was continued.

On August 11, 2017, the government filed a notice of intent to introduce evidence of defendant's prior crimes, wrongs, or other acts pursuant to Fed.R.Evid. 404(b)(2)(A). (Doc. 32).

Also, on August 11, 2017, defendant filed a motion *in limine*, (Doc. 33),

1

seeking to preclude the government from making any reference and admitting any evidence of his prior criminal record. Defendant simultaneously filed his brief in support. (Doc. 34).

On August 14, 2017, defendant filed an amended motion *in limine* which incorporates his original motion and additionally seeks to preclude the government from referencing his gang affiliation.[1] (Doc. 36). The amended motion also seeks the court to order the government to redact all mention of his criminal record, prior bad acts and gang affiliation from the audio/video recordings between defendant and a confidential informant ("CI") and from a recorded interview with defendant after his arrest that the government will be attempting to introduce into evidence at trial.

On August 18, 2017, the government filed its brief in opposition to defendant's motion *in limine* with an attachment consisting of a list of defendant's prior criminal convictions. (Doc. 39).

Additionally, on August 24, 2017, defendant filed a motion to suppress evidence, pursuant of Fed.R.Crim.P. 12(b)(3)(c), seeking to suppress all information seized from his cellular ("cell") phone. (Doc. 43). On September 1, 2017, defendant filed his brief in support of his suppression motion, (Doc. 49), with attached exhibits, namely, a copy of the search warrant application for defendant's LG cell phone with the Affidavit of ATF Special Agent Jarrod

---

[1]Since defendant's Doc. 36 amended motion superseded his Doc. 33 and incorporated its content, the court termed his Doc. 33 motion.

C. Chittum, (Doc. 49-1), and a copy of the search warrant for defendant's cell phone, (Doc. 49-2), signed by Judge Mehalchick on January 17, 2017. On September 8, 2017, the government filed its brief in opposition to defendant's suppression motion. Defendant did not file a reply brief in support of his suppression motion and the time within which to do so has expired. (Doc. 47).

The court will now consider the merits of defendant's motion *in limine* and conduct a balancing test and analyze the applicable *Bedford* factors. The court will then address defendant's suppression motion.


## II.    DISCUSSION

Defendant's motion *in limine* is mainly filed pursuant to Fed.R.Evid. 404(b) and 609(a)(1)(B). The motion also seeks, in part, to exclude evidence as irrelevant. It is axiomatic that "irrelevant evidence is not admissible." Fed.R.Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed.R.Evid. 401. Even if evidence is relevant, the court can exclude it if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Federal Rule of Evidence 404(b) precludes the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show

3

conformity therewith". However, under Rule 404(b), such evidence is admissible for legitimate evidentiary purposes such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake."

Federal Rule of Evidence 609 pertains to the use of prior convictions for impeachment purposes and provides:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
> (B) must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant[.]

Fed.R.Evid. 609(a)(1)(B).

### A. Felon In Possession Charge

Initially, defendant contends that since he is going to stipulate that he was prohibited from possessing a firearm, (Doc. 34 at 1), the government should not be permitted to introduce his prior felony convictions for controlled substances, theft and burglary offenses with respect to the felon in possession of a firearm charge. He also appears to argue that the government should not be permitted to introduce his January 6, 2017 recorded statement in which he allegedly references his prior convictions and arrests and, his status as a parolee with respect to the felon in possession of a firearm charge. Defendant cites to Old Chief v. United States, 519 U.S. 172

4

(1997), for support.

In U.S. v. Higdon, 638 F.3d 233, 241-42 (3d Cir. 2011), the Third Circuit considered whether *Old Chief* stands for "the proposition that evidence of a defendant's prior conviction is not admissible when a defendant offers to stipulate to the conviction" and found that it does not. Rather, the Third Circuit in *Higdon, id.*, explained the holding of *Old Chief* as stated:

> [The Supreme Court] held only that the "name or general character of that crime" need not be disclosed because "the fact of the qualifying conviction is alone what matters under the statute [i.e., §922(g)(1)]." Id. at 190, 117 S.Ct. 644. In fact, the Court anticipated that a jury would be informed of the stipulation about a defendant's prior conviction. The Court explained that: "the most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possession of a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." Id. at 190–91, 117 S.Ct. 644. Thus, the Supreme Court did not hold, as [defendant] contends, that the jury need not be informed of the fact of a prior conviction when that prior conviction is an element of the charged offense. On the contrary, the Court affirmed that the jury must still be made aware of the existence of a defendant's prior conviction.

*See also* United States v. Chevere, 368 F.3d 120, 121 (2d Cir. 2004) (The Second Circuit held that "[a]lthough a defendant may, by stipulating that he has a prior felony conviction, prevent the jury from hearing the nature or underlying facts of the conviction, he may not prevent the jury from learning the fact that he has a prior felony *conviction—a 'crucial element' of the offense*." (emphasis in original).

Thus, since defendant's prior felony conviction is a critical element of

the §922(g)(1) offense and the court is required to instruct the jury about all elements of this offense, the jury will be informed of the stipulation that defendant has a prior felony conviction that falls within the class of crimes that Congress determined should bar a person from possession of a gun.

### B. Prior Convictions and Gang Affiliation

In his motion *in limine*, (Doc. 36), defendant seeks the court to preclude all evidence regarding his prior criminal record as well as statements about his criminal activities and gang affiliation which were recorded by the government. He also seeks complete exclusion of all the stated evidence for impeachment purposes, in rebuttal to his entrapment defense, and in the government's case-in-chief. In his motion, defendant states that he anticipates presenting an entrapment defense at his trial. (Doc. 36 at 2). In his brief in support of his motion, (Doc. 34 at 1), defendant categorizes his prior convictions as follows:

> 1. Misdemeanor and Felony Drug Offenses; 2. Other Misdemeanor and Felony offenses that are not considered crimes of dishonesty; 3. Misdemeanor and Felony crimes of dishonesty, which occurred at least seventeen (17) years prior to the instant indictment; and 4. A 2010 retail theft Misdemeanor [2nd degree] conviction.

The government notes that at this time it does not seek to introduce defendant's prior felony convictions during its case-in-chief, and that it does not presently intend on introducing any of defendant's felony convictions older than ten years for impeachment purposes if he testifies. (Doc. 39 at 8 n. 2).

As such, the court need not address any of the defendant's felony convictions older than ten years.

The government does contend that if defendant testifies at trial, it should be allowed to impeach him by introducing evidence of his seven felony convictions for controlled substances and retail theft offenses which occurred within the past ten years.[2]

"Rule 609 permits evidence of a prior felony conviction to be offered to impeach a testifying witness. However, when the testifying witness is also the defendant in a criminal trial, the prior conviction is admitted only 'if the probative value of the evidence outweighs its prejudicial effect to that defendant.'" U.S. v. Caldwell, 760 F.3d 267, 286 (3d Cir. 2014) (citing Fed.R.Evid. 609(a)(1)(B)). The Third Circuit has held that this Rule "reflects a heightened balancing test" with a "predisposition toward exclusion" and, that "[a]n exception [to exclusion of the evidence] is made only where the prosecution shows that the evidence makes a tangible contribution to the evaluation of credibility and that the usual high risk of unfair prejudice is not present." Id. (citation omitted). "When offering a prior conviction to impeach a testifying defendant, the government bears the burden of satisfying the heightened balancing test set out in Rule 609(a)(1)(B)." Id. at 289.

---

[2]Since the complete list of the defendant's prior convictions is contained in the attachment to the government's brief, Doc. 39-1, they will not be fully repeated herein. However, as the government notes, its list "remains subject to confirmation by the outstanding certified convictions."

The Third Circuit has "recognized four factors that should be considered when weighing the probative value against the prejudicial effect under this heightened test." Id. at 286. The four factors are: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the [defendant's] testimony to the case; [and] (4) the importance of the credibility of the defendant." Id. at 286 (citing Gov't of Virgin Islands v. Bedford, 671 F.2d 758, 761 n. 4 (3d Cir. 1982)).

In considering the first factor regarding the kind of crime involved, "courts consider both the impeachment value of the prior conviction as well as its similarity to the charged crime." Id. "The impeachment value relates to how probative the prior conviction is to the witness's character for truthfulness." Id. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." Id.

The government maintains that in this case "the inquiry hinges on the kinds of prior convictions involved." The government contends that *Bedford* factors two through four are easily resolved in favor of admitting defendant's prior convictions, which occurred within the past ten years, for impeachment purposes. (Doc. 39 at 9). The government explains as follows:

> As the convictions at issue all occurred within the last ten years, they are timely under the dictates of Rule 609. And the importance and credibility of the defendant's anticipated testimony

8

are clear, whether he asserts an entrapment defense or sticks to his manufactured alibi. "[W]hen the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction." United States v. Caldwell, 760 F.3d 267, 288 (3d Cir. 2014). Indeed, a defendant who testifies places his credibility directly at issue. United States v. Beros, 833 F.2d 455, 463-64 (3d Cir. 1987).

(Doc. 39 at 9).

The court will now consider all of the *Bedford* factors but it will start with the second factor and finish with the first factor since it will be determinative. The second factor, the age of the prior conviction, weights in favor of admissibility since the government states that it will only use the defendant's convictions that occurred within the past ten years, for impeachment purposes, and they are clearly timely under Rule 609.

"The third factor inquires into the importance of the defendant's testimony to his defense at trial." Caldwell, 760 F.3d at 287. "If it is apparent to the trial court that the accused must testify to refute strong prosecution evidence, then the court should consider whether, by permitting conviction impeachment, the court in effect prevents the accused from testifying." Id. (citation omitted). However, "[if] the defense can establish the subject matter of the defendant's testimony by other means, the defendant's testimony is less necessary, so a prior conviction is more likely to be admitted." Id. at 288 (citation omitted). The government states that "the importance and credibility of the defendant's anticipated testimony are clear, whether he asserts an entrapment defense or sticks to his manufactured alibi." (Doc. 39 at 9).

Defendant's testimony in this case may be important to demonstrate the validity of his defense and it may be "fundamentally important to his defense." Id. at 289. As such, the court will balance this factor as weighing against the admission of defendant's prior convictions.

"The [fourth] factor concerns the significance of the defendant's credibility to the case. 'When the defendant's credibility is a central issue, this weighs in favor of admitting a prior conviction.'" Id. at 288 (citation omitted). "Where a case is reduced to a swearing contest between witnesses, the probative value of conviction is increased." Id. (citation omitted). In this case, the testimony of the defendant will create a credibility contest between the defendant and the government's witnesses. It will create an issue as to whether defendant was enticed to commit the jewelry store robbery by the CI or whether he was predisposed to do it and was the actual planner of the heist. The jury will have to decide between the defendant's version of events and those provided by the CI and the other witnesses presented by the government. Also, if defendant testifies, he places his credibility directly at issue. *See* Beros, 833 F.2d at 463-64. Thus, the credibility of all of the witnesses will be crucial to establish the government's case as well as defendant's defenses.

As such, the court finds that the fourth factor weighs in favor of admitting defendant's prior convictions.

The court will now address the first factor, i.e., the types of prior

10

convictions involved. "Generally, where the crime is punishable by a sentence of more than one year imprisonment, or if the crime involved required proof of a dishonest act or false statement by the witness, such evidence must be admitted for impeachment purposes." Klatch-Maynard v. Sugarloaf Tp., 2013 WL 1789744, *3 (M.D.Pa. April 26, 2013) (citing Fed.R.Evid. 609; Green v. Bock Laundry Mach. Co., 490 U.S. 504, 527, 109 S.Ct. 1981 (1989)). When considering this factor, "the court asks whether the past conviction involved dishonesty, false statements, or any other offense in the nature of *crimen falsi*. Id. at *4 (citing Walker v. Horn, 385 F.3d 321, 334 (3rd Cir. 2004)). "Crimes of this nature are believed to have a high value of impeachment—the only proper purpose served by admitting past convictions—because they bear directly on a witness's propensity to testify truthfully." Id. (citations omitted).

Defendant's prior convictions at issue are four state felony convictions for controlled substances and two state misdemeanor retail theft offenses which occurred less than ten years ago. (Doc. 39-1). Specifically, in November 2010, defendant had a conviction for a felony drug offense, possession with intent to distribute a controlled substance, in Lackawanna County, PA. In December 2010, defendant had two separate state misdemeanor retail theft convictions in Luzerne County, PA. In January 2011, defendant had three separate convictions for felony drug offenses, delivery of a controlled substance, in Luzerne County, PA.

The court will first address defendant's two 2010 retail theft convictions.

Retail theft under Pennsylvania law,18 Pa.C.S.A. §3929(a), a person is guilty

of a retail theft if he:

> (1) takes possession of, carries away, transfers or causes to be carried away or transferred, any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof;
>
> (2) alters, transfers or removes any label, price tag marking, indicia of value or any other markings which aid in determining value affixed to any merchandise displayed, held, stored or offered for sale in a store or other retail mercantile establishment and attempts to purchase such merchandise personally or in consort with another at less than the full retail value with the intention of depriving the merchant of the full retail value of such merchandise;
>
> (3) transfers any merchandise displayed, held, stored or offered for sale by any store or other retail mercantile establishment from the container in or on which the same shall be displayed to any other container with intent to deprive the merchant of all or some part of the full retail value thereof; or
>
> (4) under-rings with the intention of depriving the merchant of the full retail value of the merchandise.
>
> (5) destroys, removes, renders inoperative or deactivates any inventory control tag, security strip or any other mechanism designed or employed to prevent an offense under this section with the intention of depriving the merchant of the possession, use or benefit of such merchandise without paying the full retail value thereof.

Defendant maintains that his prior crimes, including his retail theft

convictions, do not have any similarity to the instant charges of interference

with commerce by robbery and felon in possession of a firearm. Defendant

contends that under FRE 403 the probative value of evidence regarding his retail theft convictions is substantially outweighed by its prejudicial effect. Also, defendant contends that even if his retail theft convictions are considered related to the instant case with respect to the robbery offense, they are too prejudicial to him.

The government notes that defendant's two 2010 retail theft convictions each "carry statutory maximum penalties in excess of one year, and thus qualify as federal felonies." (Doc. 39-1 at 1 n. 3). The government states that "[defendant's 2010] convictions for retail theft both involved an attempt to exit a store after secreting items; acts of stealth and deception that carry substantial probative value." (Doc. 39 at 9-10) (citing United States v. Blakeslee, 2010 WL 1416840, at *2 (M.D. Pa. April 5, 2010) ("Crimes of stealth, such as theft or burglary, have also been found to reflect a significant lack of credibility.") (Kane, J.); *see also* Warren v. Deny,2007 WL 2120043, at *2-3 (M.D.Pa. July 20, 2007) (Conner, J.) (Retail theft conviction admissible for impeachment purposes if within ten years). However, the government proffers "that retail theft is not admissible as a crime of dishonesty or false statement under Rule 609(a)(2)," (Id. n. 3) (citing United States v. Johnson,388 F.3d 96, 100-02 (3d Cir. 2004)), and therefore not a *crimen falsi* crime. As such, this crime is "only admissible if [it] qualif[ies] under Rule 609(a)(1)", i.e., a crime punishable by more than one year, and is not too

remote. Jackson v. City of Pittsburgh, 2010 WL 2511380, at *2 (W.D.Pa. June 17, 2010). In Jackson, id. at *3, the court stated that certain aspects of retail theft "clearly require proof of dishonesty, including §2929(a)(2)-(a)(5)."

Thus, the balance of the first factor tilts toward admissibility regarding the retail theft crime which have greater impeachment value since they imply some dishonesty. The Court in *Caldwell*, 760 F.3d at 288, stated "crimes that by their nature imply some dishonesty, such as theft, have greater impeachment value and are significantly more likely to be admissible." The court agrees and will allow defendant's two retail theft convictions to impeach his credibility at trial, if he takes the stand, since they meet the time limit of 609(b) and qualify under Rule 609(a)(1) based on the penalties.

The government also contends that defendant's felony narcotics convictions are admissible. (Doc. 39 at 10). It cites to United States v. Davis, 235 F.R.D. 292, 296 (W.D.Pa. 2006), stating that "prior convictions for drug trafficking and distribution bear on the Defendant's veracity to a certain extent, particularly in light of the nature of such crimes and how the person committing them may act in furtherance of such crimes by lying to maintain secrecy." The government also states that "the potential prejudicial impact of defendant's prior felony drug convictions is lessened where, as here, they are dissimilar to the instant charges." (Id.) (citing Caldwell,760 F.3d at 286).

The Third Circuit in U.S. v. Murphy, 172 Fed.Appx. 461, 463 (3d Cir.

2006), held that drug convictions are admissible at trial for impeachment purposes under 609(a)(1) in a case where the defendant is charged with a drug offense and that "other Circuit Courts have also held that prior drug convictions in particular have probative value for impeachment purposes." (citing United States v. Cordoba, 104 F.3d 225, 229 (9th Cir.1997) ("holding that a prior conviction for possession with intent to distribute cocaine is admissible under Rule 609"); United States v. Hernandez, 106 F.3d 737, 739–40 (7th Cir. 1997) ("holding that prior convictions for possession of cocaine and marijuana are admissible to impeach defendant")).

As such, the majority of the factors weigh in favor of allowing the government to use defendant's two retail theft convictions and his felony narcotics convictions to impeach defendant's credibility if he testifies. Thus, the court finds that the Government has met its burden of showing that the probative value of defendant's stated prior convictions outweighs its prejudicial effect under Rule 609(a)(1)(B). Three of the four factors discussed by the government weigh in favor of admission of defendant's prior convictions. Further, the government's use of defendant's stated convictions will be limited to cross-examination, if he testifies. Additionally, the court will give a limiting instruction to the jury and direct the jury to consider defendant's prior convictions for impeachment purposes only. *See* U.S. v. Cherry, 2010 WL 3156529, *7.

Therefore, the first factor weighs in favor of admitting defendant's prior retail theft convictions as well as his prior drug convictions for impeachment purposes. The court will **DENY** defendant's motion *in limine* regarding defendant's two retail theft convictions and his felony narcotics convictions.

Even though the court is denying defendant's motion *in limine* regarding his prior felony drug convictions and is allowing the government to use these convictions to impeach his credibility if he testifies at trial, the court will also consider whether the government will be limited to mentioning that defendant's prior narcotics convictions were *felonies* or be allowed to specify that they were drug offenses.

In Murphy, 172 Fed.Appx. at 462, defendant appealed his conviction for possession of a firearm by a convicted felon in violation of §922(g)(1) and argued that "because the District Court allowed the government to impeach him with specific facts of his prior [drug] felonies, rather than simply that he had previously been convicted of one unspecified felony, it abused its discretion." The Third Circuit found that the district court did not abuse its discretion by permitting the government to impeach him with specifics facts from his two prior drug convictions since it "engaged in the appropriate analysis under Rule 609" and, "[it] provided the jury with a limiting instruction regarding the proper purpose of prior conviction evidence." Id.

In light of this, the court will allow the government to impeach defendant

with his prior drug felony convictions. *See Murphy, supra*; United States v. Figueroa, 2016 WL 126369 (D.N.J. Jan. 11, 2016) (The court granted government's motion *in limine* to permit it to impeach defendant on cross-examination if he testified at his trial on a §922(g)(1) felon in possession of a firearm charge by admitting his prior felony drug conviction, including specifying the nature of this prior offense, and reduced any risk of prejudice by giving an appropriate limiting instruction to the jury.).

Finally, defendant moves to preclude the government from admitting any evidence of his older felony convictions for grand theft and burglary notwithstanding his entrapment defense. The government contends that these convictions are admissible to rebut defendant's *entrapment defense*, if offered, and, that they "are fertile grounds to establish his predisposition to commit a Hobbs Act Robbery." (Doc. 39 at 11). The government notes that at this time "[it] does not seek to rebut the defendant's entrapment defense with his numerous prior convictions for controlled substances, obstruction, possession of burglary tools, criminal mischief, driving with a suspended license, contempt of court, fleeing and alluding, or retail theft", and that "[it] also does not seek to introduce prior convictions to refute any entrapment defense for the Felon in Possession charge." (Id. at n. 4).

"Entrapment is a 'relatively limited defense that may defeat a prosecution only when the Government's deception actually implants the

criminal design in the mind of the defendant.'" United States v. McLean, ---
Fed.Appx. ----, 2017 WL 3309762, *3 (3d Cir. Aug. 3, 2017)(citing United
States v. Lakhani, 480 F.3d 171, 179 (3d Cir. 2007). "Entrapment occurs
when a defendant who was not predisposed to commit the crime does so as
a result of the government's inducement." United States v. Dennis, 826 F.3d
683, 690 (3d Cir. 2016) (citations omitted). "'Although ... generally a question
for the jury,' an entrapment charge is inappropriate 'unless the defendant has
produced sufficient evidence on both prongs of the defense.'" McLean, ---
Fed.Appx. ----, 2017 WL 3309762, *3 (citing United States v. Fedroff, 874
F.2d 178, 181 (3d Cir. 1989). To obtain an entrapment instruction, defendant
has a "burden of production" regarding the following two elements:
"inducement by the government to commit the crime, and the defendant's lack
of predisposition to commit the crime." Dennis, 826 F.3d at 690 (citing United
States v. Wright, 921 F.2d 42, 44 (3d Cir. 1990)). If defendant meets his
burden with respect to both elements, then the burden shift to the government
to disprove the entrapment defense. Id. at 693.

While the government predicts that defendant will not be able to meet
his stated burden to obtain an entrapment instruction, it argues that it if the
court decides to give the instruction, it should be allowed to introduce
evidence of defendant's prior theft and burglary convictions in defense.

Recently, the Third Circuit in McLean, --- Fed.Appx. ----, 2017 WL

3309762, *3, explained:[3]

> Inducement is more than "mere solicitation" to partake in a crime. United States v. Wright, 921 F.2d 42, 45 (3d Cir. 1990). It requires a showing that law enforcement officials engaged in "persuasion, fraudulent representation, threats, coercive tactics, harassment, [or] promises of reward or pleas based on need, sympathy, or friendship." Fedroff, 874 F.2d at 184. "[P]redispositon may be defined as the defendant's inclination to engage in the crime for which he was charged, ... measured before his initial exposure to government agents." Wright, 921 F.2d at 45 (quotation omitted). Although not dispositive, relevant factors include "the character or reputation of the defendant, including any criminal record," whether the idea for the crime originated with the Government, the potential for profiting from the crime, the defendant's reluctance to participate, and the nature of the inducement. 9 Fedroff, 874 F.2d at 183 (quoting United States v. Reynoso–Ulloa, 548 F.2d 1329, 1336 (9th Cir. 1977)).

Defendant relies, in part, upon *Dennis* to support his motion *in limine*. In *Dennis*, the Third Circuit "ordered a new trial for a defendant who contended that he was entrapped into committing a fictitious drug stash house heist" and "reversed the District Court's denial of an entrapment jury instruction and vacated the conviction." Id. at *3-*4 (citing *Dennis, supra*). In *Dennis*, the Third Circuit found that the absence of defendant having prior violent crime or robbery convictions as well as his initial repeated reluctance to help, and his trial testimony were sufficient to meet his burden regarding the lack of predisposition. Id. at *4.

---

[3]Although the *McLean* case is not precedential, the above block quote of the Third Circuit in *McLean* only relies upon precedential cases.

As stated above, relevant factors with respect to the predisposition element include "the character or reputation of the defendant, including any criminal record." Id. at *3. Defendant points out that he has no prior convictions for the two crimes he is charged with in this case. (Doc. 34 at 4). The court must look at "the probative value of similar acts evidence on the issue of a defendant's predisposition to commit comparable crimes." United States v. Gambino, 788 F.2d 938 (3d Cir. 1986) (citations omitted). Prior convictions of a similar nature, i.e., a relevant criminal history, can be used by the government to rebut an entrapment defense. *See* Sanchez, 652 Fed.App'x at 89-90 (prior burglary conviction a factor for jury to reject entrapment defense to felon in possession charge); Dennis, 826 F.3d at 693 (history of convictions for both possessing and distributing small quantities of marijuana and cocaine bolster predisposition to trafficking large quantities of cocaine).

In its brief, (Doc. 39 at 14), the government states:

> Santiago-Rivera's nine prior felony convictions for grand theft and burglary are comparable to the Hobbs Act Robbery charge he now faces. The Florida burglary statute requires proof that the defendant entered a structure owned by another, without permission and with intent to commit a crime. See Fla. Standard Instructions §13.1. The Florida theft statute requires proof that the defendant knowingly and unlawfully obtained another's property with the intent to deprive that person of his right to the property. See Fla. Standard Instructions §14.1. Here, the government will prove that Santiago-Rivera knowingly and willfully attempted to enter a business and deprive its owner of his property. The additional element of using actual or threatened force, violence, or fear of injury, see 3d Cir. Model Instructions §6.18.1951-1, is

the only substantive difference, and does not overshadow the crimes' similarities.

The court finds that defendant's stated prior convictions are of a sufficiently similar nature to his present Hobbs Act robbery charge and it will allow the government to use these convictions to rebut any proffered entrapment defense.

Further, contrary to defendant's suggestion, it is of little consequence in this case that his convictions occurred several years before the time period relevant to the charges at issue and that his prior convictions are too remote in time. There is not a large gap in time among even his older convictions. Rather, the defendant has continued in a relatively uninterrupted life of crime since at least 1993. Remoteness becomes less pertinent under these circumstances. Defendant's stated convictions, i.e., his prior felony convictions for grand theft and burglary, may still be used to rebut an entrapment defense regarding the predisposition element. As in the case of U. S. v. Ward, 793 F.2d 551, 555 (3d Cir. 1986), the court finds that the relevance of defendant's stated prior convictions outweighs any prejudice based on the remoteness of the convictions since the government's evidence indicates that defendant relied upon his criminal experience to convince the CI to participate in the robbery at the jewelry store and to show that the robbery could be successfully achieved. The court finds that defendant's stated prior convictions are relevant since they tend to prove that he

21

previously participated in illegal actions that were in some way similar to the conduct he is charged with in the instant Indictment.

In his motion *in limine*, (Doc. 36 at 2), defendant also seeks to exclude the following evidence:

> 9. Additionally, it is anticipated that the Government will attempt to introduce evidence against Defendant in the form of audio/video recordings between the Defendant and a confidential informant and in the form of an interview with Defendant.
> 10. During these conversations, Defendant's criminal history and alleged gang affiliation with the Latin Kings is repeatedly references.
> 11. These pieces of information of irrelevant and inadmissible. United States v. Irvin, 87 F.3d 860 (7th Cir. 1996).
> 12. Defendant specifically requests that this Court order the Government to redact any and all mention to Defendant's record, prior bad acts, and gang affiliation from these pieces of evidence.

The government contends that defendant's recorded statements about his prior criminal activities and gang affiliation with the Latin Kings are admissible for purposes of rebutting defendant's entrapment defense. The government, however, points out that defendant's "references to gang affiliation lie in witness testimony, not in any recorded conversation." (Doc. 39 at 15 n. 5). Nonetheless, defendant claims that these statements are irrelevant and unduly prejudicial and should be deemed inadmissible under FRE 401.

The government also argues that the probative value of defendant's recorded statements, i.e., allowing the government to rebut defendant's

entrapment defense, outweighs any potential prejudice to defendant in permitting the jury to hear the statements. The government contends that defendant's recorded statements show "[his] attempt to further his designs by bolstering his own credibility, while assuaging and retaining the support of the CI" who had "expressed concern about participating in his first burglary." (Doc. 39 at 15-16).

The court will allow the government to introduce defendant's recorded statements at trial, including references about his prior criminal activities, only for purposes of rebutting defendant's entrapment defense. The court finds that such evidence is not being introduced as improper character evidence. However, the court will not allow the government to present witness testimony which references defendant's gang affiliation with the Latin Kings for any purpose, i.e., either for impeachment or to rebut defendant's entrapment defense, since it finds that its prejudicial effect greatly outweighs any probative value. "Courts have observed that '[e]vidence of gang affiliation, like all other evidence, is admissible if relevant to a disputed issue, but if such evidence is more prejudicial than probative, it should be excluded.'" U.S. v. Ranalli, 2015 WL 539729, *8 (M.D.Pa. Feb. 10, 2015) (citations omitted). Thus, since the court finds that the prejudice associated with the gang affiliation evidence "substantially outweighs" any purported probative value, it will not allow such evidence at trial. *See* Fed.R.Evid. 403.

### C. Cell Phone Records

As indicated, defendant has recently filed a motion seeking to suppress all evidence obtained from his cell phone under the Fourth Amendment. (Doc. 43). Even though the suppression motion appears untimely, the court will consider it since defendant has shown good cause why his motion was late, he has limited his motion to evidence which was not provided to him during initial discovery and which was unknown to his counsel until the second week of August 2017. *See* U.S. v. Staton, 605 Fed.Appx. 110, 113 (3d Cir. 2015) ("If a party does not meet the deadline for making a [motion to suppress], the motion is untimely," and deemed waived absent a showing of 'good cause' for the delay.") (citing United States v. Rose, 538 F.3d 175, 181 (3d Cir. 2008); Fed.R.Crim.P. 12(c)(3)). The motion has been briefed and will be now addressed.

By way of relevant background regarding, on January 17, 2017, ATF Special Agent Chittum executed an Application for a Search Warrant before Judge Mehalchick seeking to search LG Cellular Telephone, MOD LGMS631I, S/N: 511CYFT800371, IMEI: 358388-06-800371-1. (Doc. 49-1). The Application sought to search for "Evidence of a felon in possession of a firearm and the interference with commerce by threats or violence." ([Doc. 49-1). The Affidavit of Chittum attached to the Application, (Doc. 49-1), contained the following pertinent information:

On December 28, 2016, ATF [Confidential Informant ("the CI")] contacted ATF Special Agent Ryan Kovach, regarding [defendant]. The CI advised that [defendant] was attempting to obtain a firearm to use in the robbery of Simon's Jewelry Store located at 502 Market St., Kingston, Luzerne County, PA 18704. [Defendant] also requested that the CI locate a third party willing to participate in the robbery. On December 29, 2016, a recorded phone call was made by the CI to [defendant's cellular phone]. In that conversation, [defendant] restated his plan to conduct the robbery of Simon's jewelry store. Also, [defendant] indicated to the CI that he had previously been inside the store to familiarize himself with the store layout and number of employees present during the day. [Defendant] indicated to the CI that he is seeking a firearm to commit the robbery and continued to request a firearm from the CI. [Defendant] detailed his plans for the robbery, wherein the CI would act as a get-away driver and the third party obtained by the CI would enter the jewelry store with [defendant] during the commission of the robbery. On January 3, 2017, [the owner of the jewelry store was 90% sure that defendant had been in the store within the last few weeks]. On January 4, 2017, another recorded phone call was made by the CI to [defendant at his cell phone number]. During that conversation, [defendant] inquired if the CI had obtained the firearm. The CI stated he did not have the firearm yet, but "would be good to go" on Friday morning. On January 6, 2017, [after the CI's arrest on January 3, 2017, on forgery and receiving stolen property charges] the CI received a phone call from [defendant] that was recorded. During the conversation, [defendant] provided information to the CI that he has inside information [from Ricky Hartman a store employee] about the jewelry store owner and his business [namely, that the owner was going on vacation and that they would wait until the owner returned to commit the burglary]. The CI and [defendant] agreed to meet later in the day to further discuss robbery plans and to do a "dry run" in order to scout the jewelry store and surrounding area. [The CI and his car were equipped with audio/video recording devices]. [After the "dry run"] the CI indicated to [defendant] that the third party would be arriving with the firearm in [one-and-one-half hours].

At the set time, ATF Agents installed a firearm, which was manufactured outside of Pennsylvania, namely, a Glock 17, into a toolbox that was placed in the rear of the CI's vehicle. The CI drove to defendant's residence and asked him to come outside which defendant did. The CI told defendant that the firearm was in the rear of his car and defendant then reached into the box and took possession of the firearm. At this time, defendant was arrested and taken into custody by ATF Agents.

Additionally, after defendant was in custody, he was read his *Miranda* rights and waived them in writing. He was then questioned and, he admitted to possessing the firearm and discussing his plans to commit an armed robbery of Simons' Jewelry Store. (Id. at 7-8).

The store owner later confirmed that Ricky Hartman had worked for him as a handyman for about 12 years. Hartman admitted that he knew defendant for 6-7 years but stated that he did not have any involvement regarding the store robbery. However, Hartman admitted that he deleted text messages between himself and defendant which ATF agents believed were still on defendant's cell phone.

Based on the above facts, Chittum sought a search warrant to search defendant's cell phone for the following information: "telephone or address directory entries consisting of names, addresses and telephone numbers;

logs of telephone numbers dialed, telephone numbers of missed calls, telephone numbers of incoming calls; schedule entries; stored memoranda; stored voice mail and text messages; stored photographs; and emails transmitted back and forth." (Doc. 49-1 at 12-13). In the Application, (Id. at 15), the following items were specified to be seized:

> Stored electronic information and communications contained in the subject mobile phones, including telephone or address directory entries consisting of names, addresses and telephone numbers; telephone numbers of incoming and outgoing calls; schedule entries; stored memoranda; stored voicemail messages; text messages sent, received and/or saved as drafts; internet search history; emails; and stored photographs and videos; electronic data stored in the memory of the subject mobile phones and/or stored in the memory of the SIM card of such phones.

On January 17, 2017, Judge Mehalchick approved a Search and Seizure Warrant for all of the above stated items. (Doc. 49-2).

Defendant now moves to suppress all evidence seized from his cellular phone under Fed.R.Crim.P. 12(b)(3)(C). (Doc. 43). This court has jurisdiction over his motion to suppress under 18 U.S.C. §3231.

Protection against unreasonable searches and seizures is enshrined in the Fourth Amendment, which states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const.

amend. IV.

"The Fourth Amendment, like the other Amendments contained in the Bill of Rights, imposes direct limitations on the actions that may be taken by the Federal Government." Adams v. Springmeyer, 17 F.Supp.3d 478, 490 (W.D.Pa. 2014) (citing McDonald v. City of Chicago, 561 U.S. 742, 753–55, 130 S.Ct. 3020, 3028, (2010)). The Fourth Amendment's purpose is to "safeguard the privacy and security of individuals against arbitrary invasions" by the government. Camara v. Mun. Ct. of S.F., 387 U.S. 523, 528, 87 S.Ct. 1727 (1967).

The Fourth Amendment lays out four requirements of a valid warrant. The warrant must: 1) be based on probable cause; 2) be supported by a sworn affidavit; 3) describe particularly the place of the search; and 4) describe particularly the persons or things to be seized. Groh v. Ramirez, 540 U.S. 551, 557 (2004).

The district court conducts a deferential review of the initial probable cause determination made by the magistrate judge regarding a search. U.S v. Stearns, 597 F.3d 540, 554 (3d Cir. 2010) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317 (1983)). "The role of a reviewing court is not to decide probable cause *de novo*, but to determine whether 'the magistrate [judge] had a substantial basis for concluding that probable cause existed.'" Id. (citation omitted). "If a substantial basis exists to support the magistrate

[judge's] probable cause finding, [the court] must uphold that finding ...." Id. Doubtful or marginal cases should be "largely determined by the preference to be accorded to warrants." Id. (citation omitted). In evaluating a search warrant application, "the magistrate [judge] must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (citation omitted). A search warrant can be issued even when supported by an affidavit which does not contain direct evidence linking the crime with the place to be searched. Id. "Probable cause can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'" Id. (citation omitted).

A "general warrant" is a warrant that is invalid because it authorizes a "general, exploratory rummaging in a person's belongings." Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). The Fourth Amendment seeks to prevent such exploratory rummaging through its particularity and specificity requirements, stating that the warrant must "particularly describe the place to be searched, and the persons or things to be seized." The Third Circuit has provided an extensive yet non-exhaustive list of examples of language in general warrants, which permit the search and seizure of such vague categories of items as: "smuggled goods"; "obscene materials"; "books,

records, pamphlets, cards, receipts, lists, memoranda, pictures, recordings and other written instruments concerning the Communist Party of Texas"; "illegally obtained films"; and "stolen property." United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents ($92,422.57), 307 F.3d 137, 149 (3d Cir. 2002) (hereinafter "Ninety-Two Thousand") (citations and quotation marks omitted).

A "general warrant" is to be distinguished from an "overly broad warrant," which describes in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause. United States v. Karrer, 460 F. App'x 157, 162 (3d Cir. 2012). Evaluating whether a warrant is overly broad involves "measuring the scope of the search and seizure authorized by the warrant against the ambit of probable cause established by the affidavit upon which the warrant issued." United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982).

The exclusionary rule calls for the suppression of evidence obtained during an unconstitutional search or illegal seizure. In United States v. Leon, 468 U.S. 897, 916, 920 (1984), the Supreme Court recognized that the goals of deterrence would not be furthered "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate [judge] and acted within its scope." Hence, the "good faith exception" to the exclusionary rule arose from *Leon*. The Supreme Court later clarified that the

exclusionary rule can only be triggered where "police conduct" is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." Herring v. United States, 555 U.S. 135, 136, 129 S. Ct. 695, 697, 172 L. Ed. 2d 6 (2009).

"A search under the Fourth Amendment only occurs when there is an expectation of privacy in the contents of the searched object." United States v. Chambers, 2017 WL 4005641, *7 (D.De. Sept. 12, 2017) (citing Katz v. U.S., 389 U.S. 347, 360-62 (1967)). "Because of the unique nature of the information that could be collected from a cell phone and the amount of information that could be collected, society has recognized an individual's reasonable expectation of privacy in the contents of his or her cell phone." Id. (citing Riley, 134 S. Ct. at 2494-95). "Thus, a search of the contents of a cell phone without a warrant or an exception to the warrant requirement, would be a violation of the Fourth Amendment." Id. There is no dispute that defendant has standing to challenge the legality of the search of his cell phone content since he owned the phone and he clearly had an expectation of privacy with respect to his phone and the information contained therein. *See Chambers, supra*.

Even though law enforcement did obtain a search warrant before searching the contents of defendant's cell phone, he still challenges the

constitutionality of the search. Defendant cites to United States v. Russian, 848 F.3d 1239, 1245 (10th Cir. 2017), for the proposition that "[t]he Fourth Amendment requires that search warrants be supported by probable cause and 'describe with particularity 'the place to be searched, and the persons or things to be seized.'" (Id.). In Russian, 848 F.3d at 1244-45, the Tenth Circuit held that "[i]n protecting against unreasonable searches and seizures, the Fourth Amendment mandates two requirements for search warrants: a warrant must be supported by probable cause, and it must describe with particularity 'the place to be searched, and the persons or things to be seized.'" (citations omitted). In *Russian, id.*, "the [search] warrant itself merely authorized a search of Russian's residence and seizure of any cell phones found inside. The warrant did not identify either of the phones that were already in law enforcement's custody, nor did it specify what material (e.g., text messages, photos, or call logs) law enforcement was authorized to seize." As in the *Russian* case, defendant seeks to suppress evidence seized from his cell phone claiming that the search warrant lacked the requisite particularity rendering the search of his cell phone as unconstitutional and rendering any evidence seized therefrom as inadmissible.

Specifically, in his brief, (Doc. 49 at 5-6), defendant argues:

> The search warrant at issue is overbroad and not sufficiently particular, in violation of the Fourth Amendment. Like the general search of a computer, the warrant in this case authorized

the search of an entire cell phone. In the instant matter[,] there is no "limiting principle" to the warrant at issue. To the contrary, the search conducted was limitless. In addition to be unlimited in principle, the warrant was unlimited in time. The amount of information seized in this case is particularly troublesome. Defendant received the "cell phone dump" from this particular cell phone in discovery. There is information contained dating back to 2005. Over a decade of Defendant's personal information was searched and seized in this matter, which only involved a crime limited to, at most, a month in scope. The conspiracy at issue in this case did not come about until December 2016. Defendant was arrested in January 2017. Any preceding information was absolutely irrelevant to the conspiracy and probable cause did not exist for its search and/or seizure.

Thus, defendant maintains that since the search warrant was overbroad and lacked the requisite particularity, all of the information seized from his cell phone should be suppressed.

"Evidence obtained pursuant to a warrant that does not comply with the Fourth Amendment's particularity requirement may be excluded from evidence at trial under the exclusionary rule." U.S. v. Dougherty, 541 F.Supp.2d 734, 738 (E.D.Pa. 2008) (citation omitted). In Russian, 848 F.3d at 1245, the Tenth Circuit acknowledged that "warrants may pass the particularity test if they limit their scope either 'to evidence of specific federal crimes or to specific types of material.'" (citations omitted). Further, the Third

Circuit has drawn a distinction between a general warrant and a warrant that is over broad in Ninety-Two Thousand, 307 F.3d at 149. "An overly broad warrant 'describe[s] in both specific and inclusive generic terms what is to be seized,' but it authorizes the seizure of items as to which there is no probable cause." Id. (citation omitted). "An overly broad warrant, [ ], can be cured by redaction, that is, by 'striking from [the] warrant those severable phrases and clauses that are invalid for lack of probable cause ...." Id. (citation omitted).

The court has reviewed the Affidavit of the ATF agent, (Doc. 49-1), which is detailed above in pertinent part, and finds that it provides a sufficient connection that evidence of criminal activity regarding illegal possession of firearms and interference with commerce by threats or violence would be found on defendant's cell phone. As recounted above, there were several recorded calls between the CI and defendant discussing the robbery in great detail as well as the firearm needed to achieve the robbery.

In this case, the search warrant for defendant's cell phone, (Doc. 49-2), incorporated Agent Chittum's application and supporting affidavit. After examining the totality of the information provided within the four corners of the affidavit, the court finds that the information provided by the experienced ATF agents, including the basis of the averments contained therein, was more than sufficient to show probable cause that evidence of criminal activity by defendant regarding illegal possession of firearms and interference with

commerce by threats or violence would be found during a search of his cell phone. *See* Gates, 462 U.S. at 238–39. The affidavit described various calls made between the CI and defendant regarding the planning of the jewelry store robbery, the dates of the calls, as well as discussions about how the firearm needed for the robbery would be obtained. There was also probable cause for the agents to believe that defendant's cell phone would have text messages to Ricky about the jewelry store and its owner. As the government states in its brief, (Doc. 51 at 2), "[the affidavit] detailed the defendant's repeated use of [his cell] phone in furtherance of the alleged crime, why agents believed evidence would be found on the phone, and what form that evidence would be found in during the search."

In reviewing an affidavit supporting a search warrant application, the district court is required to "consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences." United States v. Yusuf, 461 F.3d 374, 390 (3d Cir. 2006) (citation omitted).

The court finds that the search warrant was sufficient and had the required specificity. "Probable cause is present so long as the 'veracity' and 'basis of knowledge' of persons supplying hearsay information provide a fair probability, under the totality of the circumstances, that evidence of criminal

activity will be discovered in a certain place." U.S. v. Pearson, 181 Fed.Appx. 192, 195 (3d Cir. 2006) (citing Gates, 462 U.S. at 238). Further, "direct evidence of a crime is not required for the issuance of a search warrant." Id.

Nor was the warrant a general warrant since it did not "authorize 'a general exploratory rummaging in a person's belongings.'" United States v. Yusuf, 461 F.3d 374, 393 (3d Cir. 2006). As the government explains in its brief, (Doc. 51 at 4-5):

> In this case, the warrant authorized the agents to seize specific categories of information in the phone as evidence, fruits and instrumentalities in furtherance of the two specific alleged crimes. Attachment B to the warrant specifies seizure of telephone or address directory entries consisting of names, addresses and telephone numbers; telephone numbers of incoming and outgoing calls; schedule entries; stored memoranda; stored voicemail messages; text messages sent, received and/or saved as drafts; internet search history; emails; and stored photographs and videos; electronic data stored in the memory of the subject mobile phones and/or stored in the memory of the SIM card of such phones.

Thus, the warrant sufficiently specified the items to be seized from defendant's cell phone. Therefore, the court finds that the present case is distinguishable from *Russian, supra.*

Finally, defendant argues that the search warrant violated the particularity requirement because it did not limit the search and seizure of the information stored in his cell phone to a specific time period. Defendant again relies on the *Russian* case arguing that his case is similar to it since the

warrant for his cell phone also lacked the required specificity. However, as the government states, (Doc. 51 at 5-6), *Russian* is not similar to the instant case since the warrant at issue, as detailed above, specifically identified defendant's cell phone and what the agents were authorized to search and seize. (*See* Doc. 49-1). Also, in the detailed investigation background contained in the affidavit there were specific references to the dates of the relevant calls between defendant and the CI during December 2016 and January 2017. In Ninety-Two Thousand, 307 F.3d at 150-51, the Third Circuit considered whether a warrant violated the particularity requirement because it did not restrict the search and seizure to documents concerning transactions that occurred during the time period of the alleged illegal scheme. The court stated that "[t]his argument, however, does not provide a ground for suppressing the evidence ...." Rather, the Third Circuit stated that based on its decision in United States v. Christine, 687 F.2d 749, 753 (3d Cir. 1982), "the proper remedy for this putative defect was simply to excise the years for which there was no probable cause" and that "[a]t most, the lack of time restrictions meant that the warrant was overly broad, not general." The Third Circuit concluded that "the absence from the warrant of a provision limiting the search and seizure to documents pertaining to the time period of the scheme did not make the warrant 'so facially deficient' 'as to render official belief in its [legality] entirely unreasonable.'" Id. at 151 (citation omitted). The

court finds that while the warrant for defendant's cell phone may be broad in terms of the time frame, it was not general. The court also notes that the government has represented that in the present case "[it] has no intention of using any information extracted from the phone that may be beyond the relevant time frame." (Doc. 51 at 5). To assure this, the court will restrict the use of information received from the search of the cell phone to on or about December 2016 to January 2017 unless during the trial information is presented that would give the court reason to reconsider its ruling.

Based on the facts and circumstances of the instant case, the court finds that the search warrant satisfied the Fourth Amendment's particularity requirement. As such, Judge Mehalchick was provided with the requisite "substantial basis" for finding that probable cause existed to search defendant's cell phone.

The court finds that an evidentiary hearing is not required in the present case since defendant's suppression motion does not "set forth and identify for the court specific any concrete 'issues of fact material to the resolution of [his] constitutional claim[s].'" U.S. v. Hines 628 F.3d 101, 105 (3d Cir. 2010) (quoting Voigt, 89 F.3d at 1067). As such, the court, in its discretion, finds that there is no need for an evidentiary hearing regarding defendant's suppression motion. Therefore, defendant's motion to suppress evidence pertaining to his cell phone, (Doc. 43 ), will be denied in part as noted above.

## III. CONCLUSION

For the foregoing reasons, the court will **DENY** defendant's motion *in limine*, (Doc. 36) and will also **DENY** defendant's motion to suppress evidence, (Doc. 43), obtained from his cell phone, as noted above. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 12, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CRIMINAL MEMORANDA\2017 CRIMINAL MEMORANDA\17-006-01.wpd